UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
DAISY URGILES,

Plaintiff,

- against -

CITY OF NEW ROCHELLE, *et al.*,

Defendants.
-----------------------------------------------------------x

**OPINION & ORDER**

No. 23-CV-9053 (CS)

Appearances:

Sameer Nath
Sim & Associates PLLC
Bayside, New York
*Counsel for Plaintiff*

Seibel, J.

Before the Court is Plaintiff Daisy Urgiles's unopposed motion to enforce the terms of the parties' settlement or, in the alternative, vacate the dismissal of the action. (ECF No. 55 ("P's Mot.").) For the following reasons, the motion to enforce is GRANTED.

## I. BACKGROUND

The Court presumes the parties' familiarity with the underlying facts, which were recited on the record in detail during the bench ruling held on March 27, 2025. (*See* Minute Entry dated Mar. 27, 2025; ECF No. 36.) In that ruling the Court dismissed all claims except for the excessive force claim against Defendant Christopher Michaels ("Defendant"). The parties then engaged in fact discovery, which was originally scheduled to close by October 16, 2025, (ECF No. 33), but was extended until December 17, 2025, (ECF No. 44). In the parties' last joint extension request on November 13, 2025, Defendant's then-counsel, Denise M. Cossu, informed the Court that Defendant had not yet been produced for a deposition "due to an ongoing conflict

between the City [of New Rochelle] and him," and that the City had notified Defendant that it would no longer be providing him with a defense and indemnification in this matter. (ECF No. 43.) But Ms. Cossu continued to represent Defendant for the time being, in an effort to resolve the case. (*See* ECF No. 48 ¶ 6.)

Plaintiff claims, and Defendant does not dispute, that on December 10, 2025, Ms. Cossu, on behalf of Defendant, and Plaintiff's counsel, Sameer Nath, verbally agreed to settle this matter for $10,000, to be paid no later than January 31, 2026. (*See* P's Mot. at 1; ECF No. 50 at 1.) On December 12, 2025, Ms. Cossu drafted a written agreement memorializing the settlement and emailed it to Mr. Nath. (*See* ECF No. 50 at 1; ECF No. 55-1 at 2.)[1] In her email, she indicated that she would have Defendant sign the agreement the following week if Mr. Nath approved of its terms. (*See* ECF No. 55-1 at 2.)

On December 16, 2025, Ms. Cossu filed a letter, with the consent of Mr. Nath, informing the Court that the parties had agreed to a settlement in principle and requesting that all deadlines be adjourned without date "to allow the settlement paperwork to be finalized and executed." (ECF No. 45.) On December 18, 2025, the Court issued an order discontinuing the action with prejudice, but providing that "if settlement is not consummated within forty-five days of the date of th[e] order, Plaintiff may apply by letter within the forty-five-day period for restoration of the action to the Calendar of the undersigned, in which event the action will be restored." (ECF No. 46.)

Plaintiff signed the agreement drafted by Ms. Cossu, and Mr. Nath forwarded the executed agreement to Ms. Cossu on January 12, 2026 for Defendant's signature. (*See* ECF No.

---

[1] Citations to the email communications attached as an exhibit to Plaintiff's motion, (ECF No. 55-1), use the page numbers generated by the Court's Electronic Case Filing ("ECF") system.

50 at 2; ECF No. 55-1 at 9; *see also* ECF No. 56 ("Settlement Agreement").) On January 23, 2026, however, Ms. Cossu informed Mr. Nath that Defendant had failed or refused to go to her office to sign the settlement agreement. (*See* ECF No. 50 at 2.)

That same day, Ms. Cossu filed a proposed order to show cause seeking to be relieved as counsel. (ECF No. 47.) In the accompanying declaration, Ms. Cossu explained that even after the City ceased payment of legal fees related to Mr. Michaels's defense, her firm had continued to act as counsel, which had resulted in the settlement in principle that had been reported to the Court. (ECF No. 48 ¶¶ 5-6.) Despite these efforts, however, Ms. Cossu reported that there had been "a complete breakdown in the attorney-client relationship between [her] firm and Mr. Michaels," such that continued representation was no longer feasible, particularly given that her firm was not being compensated and had no reasonable expectation of payment for continued representation. (*Id.* ¶¶ 7-8.) The Court thus issued an order requiring Defendant to appear on February 23, 2026 and show cause why an order should not be entered relieving Ms. Cossu and her firm as counsel. (ECF No. 49.)[2]

On January 26, 2026, Plaintiff filed a letter seeking a pre-motion conference in anticipation of a motion for entry of judgment in the agreed-upon amount of $10,000. (ECF No. 50.) Mr. Nath requested that the pre-motion conference be held simultaneously with the hearing on the order to show cause so that Ms. Cossu could "confirm the terms of the settlement agreement prior to being relieved as Counsel," (*id.*), and the Court granted that request, (ECF No. 51).

[2] The return date on the order to show cause was later adjourned to March 5, 2026 because Ms. Cossu was unavailable on the original date. (*See* ECF Nos. 53, 54.)

Mr. Nath, Ms. Cossu and Defendant all appeared on March 5, 2026 to discuss Ms. Cossu's withdrawal application and Mr. Nath's pre-motion letter. (*See* Minute Entry dated Mar. 5, 2026.) Ms. Cossu informed the Court that Defendant had still not paid the settlement amount, nor had he made any efforts to compensate her for continued representation. When asked why he had refused to cooperate with counsel, Defendant replied that he "didn't have the funds at the time." He then announced that he had spoken separately with Ms. Urgiles and that she had agreed to settle the action for $7,000 rather than the $10,000 specified in the parties' original agreement. This purported new agreement had not been communicated to Mr. Nath or Ms. Cossu. After relieving Ms. Cossu as counsel, the Court directed Mr. Nath to confer with his client and ensure that she understood her options. The Court then set a briefing schedule for the motion to enforce in the event the parties could not reach an agreement.[3]

On April 3, 2026, Plaintiff filed the instant motion, requesting that the Court so-order the settlement agreement drafted by Ms. Cossu and signed by Plaintiff or, in the alternative, vacate the dismissal of the action. (*See generally* P's Mot.) In the motion, Mr. Nath informed the Court that Defendant's reduced offer of $7,000 "did not apportion for costs and attorney's fees" and that Plaintiff thus "stands by the amount already agreed upon." (*Id.* at 2.) He also said that he had spoken directly with Defendant at least five times in an attempt to negotiate an extended timeline for payment, but that his efforts had not been successful. (*Id.*)[4]

[3] This recitation of the events at the March 5, 2026 proceeding is based on the Court's recollection and its law clerk's detailed notes.

[4] Although Plaintiff's motion states that the settlement agreement was attached to the motion as "Exhibit 1," (P's Mot. at 2), the only attachment to the motion was the email chain between Mr. Nath and Ms. Cossu, (*see* ECF No. 55-1). After the Court alerted Plaintiff's counsel of this error on August 7, 2026, he filed the partially executed agreement on the docket. (ECF No. 56.)

## II. LEGAL STANDARD

"A settlement agreement is a contract, no different in principle from any other. It arises once the parties reach complete agreement with the intention to be bound." *Morales v. Bund Inc.*, No. 22-CV-512, 2023 WL 8361295, at *2 (E.D.N.Y. Oct. 16, 2023).[5] "Once a court finds that parties reached a settlement agreement, the prevailing view is that such agreement is binding on all parties, even if a party has a change of heart between the time of the agreement and the time it is reduced to writing." *Green v. N.Y.C. Transit Auth.*, No. 15-CV-8204, 2022 WL 2819738, at *1 (S.D.N.Y. May 10, 2022), *report and recommendation adopted*, 2022 WL 2819578 (S.D.N.Y. July 19, 2022); *see Spheyr, Inc. v. Brooklyn Minds Psychiatry P.C.*, No. 22-CV-8427, 2024 WL 3085060, at *3 (S.D.N.Y. June 20, 2024) ("When a party enters into a settlement agreement through a deliberate, strategic choice, that party's subsequent change of heart will not unmake a bargain already made."), *appeal withdrawn*, No. 24-1947, 2024 WL 5330676 (2d Cir. Oct. 17, 2024). Thus, "[a] district court has the power to enforce summarily, on motion, a settlement agreement reached in a case pending before it." *Elliott v. City of N.Y.*, No. 11-CV-7291, 2012 WL 3854892, at *2 (S.D.N.Y. Sep. 5, 2012).

In determining whether to enforce a settlement agreement that has not been executed by both parties, courts in this Circuit consider the following four factors, often referred to as the *Winston* factors:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a signed writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

[5] Unless otherwise noted, case quotations omit all internal quotation marks, citations, alterations, and footnotes. The Court will send Defendant copies of any unreported decisions cited in this Order.

*Winn v. Seaport Manor Corp.*, No. 01-CV-5349, 2002 WL 31133388, at *2 (S.D.N.Y. Aug. 22, 2002); *see Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985).

## III. <u>DISCUSSION</u>

### A. <u>Motion to Reopen</u>

As a threshold matter, "a federal court does not automatically retain jurisdiction to hear a motion to enforce or otherwise apply a settlement in a case that it has previously dismissed." *Chigirinskiy v. Panchenkova*, 319 F. Supp. 3d 718, 728 (S.D.N.Y. 2018); *see Collins v. Ford Motor Co.*, No. 97-CV-757, 2007 WL 911896, at *2 (D. Conn. Mar. 22, 2007) (explaining that "the enforcement of a settlement agreement is more than just a continuation or renewal of the dismissed suit," and thus "the enforcement of a settlement agreement generally must be pursued in state court"). Therefore, "where a federal suit has already been dismissed based on a settlement agreement, and the plaintiff thereafter asks the court to enforce the parties' agreement, the court must first satisfy itself that it has retained ancillary jurisdiction to act," either by expressly retaining jurisdiction over the settlement or incorporating the terms of the agreement into an order. *Romero v. New Blue Flowers Gourmet Corp.*, No. 16-CV-8753, 2021 WL 860986, at *2-3 (S.D.N.Y. Mar. 8, 2021) (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 379-80, 381-82 (1994)).

This case was discontinued with prejudice on December 18, 2025, and the dismissal order neither provided that the Court retained jurisdiction over the settlement nor incorporated the terms of the settlement. (ECF No. 46.) Thus, while Plaintiff's request to vacate the dismissal appears to be in the alternative to her request to so-order the settlement, the Court lacks jurisdiction to issue such an order unless the case is reopened.

That said, the dismissal order expressly provided that the action would be restored upon Plaintiff's motion if the settlement were not consummated within forty-five days of the order, *i.e.*, February 1, 2026. (*Id.*) And Plaintiff's pre-motion letter was filed before that deadline, on January 26, 2026. (ECF No. 50.) Accordingly, the Court reopens the case for the purpose of addressing the motion to enforce the settlement. *See Booth Oil Site Admin. Grp. v. Booth*, No. 98-CV-696, 2010 WL 11549710, at *3 (W.D.N.Y. Apr. 16, 2010) (court had authority to reopen and grant motion to enforce settlement agreement where order of dismissal expressly granted right to reopen within specified time if settlement was not consummated and motion was timely filed); *see also BAC Sales, Inc. v. Pac. Energy Fireplace Prods. Ltd.*, No. 15-CV-574, 2016 WL 8541046, at *3 (N.D.N.Y. Aug. 3, 2016) (construing "motion to enforce the judgment and compel enforcement of the settlement" as "a motion to vacate the judgment, reopen the case, and enforce the settlement" where dismissal order permitted reopening if settlement not consummated within specified time).

**B. Motion to So-Order Settlement**

For the reasons set forth below, the Court finds that all four of the *Winston* factors favor enforcement and thus grants Plaintiff's request to so-order the settlement agreement.

**1. Express Reservation Not to Be Bound**

Although none of the four *Winston* factors is dispositive, "courts typically allocate great weight to whether either party expressly reserved their right not to be bound absent a writing." *Morales*, 2023 WL 8361295, at *3; *see Lombardo v. JPMorgan Chase Bank, N.A.*, No. 20-CV-6813, 2025 WL 707500, at *6 (S.D.N.Y. Mar. 5, 2025) (referring to first factor as "most important" factor). "Unless a party communicates an intent not to be bound in the absence of a signed writing, the first factor will weigh in favor of enforcement." *Savor Health LLC v. Day*, No. 19-CV-9798, 2025 WL 4375079, at *3 (S.D.N.Y. Dec. 29, 2025). "Critically, the burden is

on the party opposing enforcement to have expressed a reservation to not be bound." *Savor Health LLC*, 2025 WL 4375079, at *3; *see Lombardo*, 2025 WL 707500, at *6 (first factor met where party opposing enforcement did not claim that she made an express reservation of the right not to be bound absent signed writing); *Walker v. City of N.Y.*, No. 05-CV-4, 2006 WL 1662702, at *7 (E.D.N.Y. June 15, 2006) (first prong not satisfied where party opposing enforcement "produced no evidence that [her attorney] communicated an intent not to be bound").

There is no evidence, and the circumstances surrounding the settlement do not suggest, that Defendant or Ms. Cossu expressly reserved the right not to be bound until the agreement had been executed. The letter filed by Ms. Cossu (with the consent of Mr. Nath) stated that the parties had agreed to a "settlement in principle" and requested an adjournment for "the settlement paperwork to be finalized and executed," which suggests that the parties had already reached a binding agreement and merely needed additional time to formalize it. (ECF No. 45.) *See HVN Clothing, Inc. v. Lomeway E-Com. (Luxembourg) Ltd.*, 636 F. Supp. 3d 451, 456 (S.D.N.Y. 2022) ("[A] preliminary settlement agreement may be binding even where it is designated by the parties only a settlement 'in principle.'"), *judgment entered sub nom.*, *HVN Clothing, Inc. v. Lomeway E-commerce (Luxembourg) Ltd.*, No. 22-CV-27, 2022 WL 16737095 (S.D.N.Y. Nov. 7, 2022). And in Ms. Cossu's email communications with Mr. Nath, she indicated that Defendant would sign the agreement if Mr. Nath approved of its terms. (ECF No. 55-1 at 2.)[6]

---

[6] Although the extent of Defendant's direct involvement in the settlement negotiations is unclear, there is a presumption "that an attorney-of-record who enters into a settlement agreement, purportedly on behalf of a client, had authority to do so," and a "party disputing his or her attorney's authority bears the burden of proving by affirmative evidence that the attorney

Nor does the language of the agreement itself establish that the parties did not intend to be bound until the agreement was fully executed. On the one hand, the agreement contains a merger clause stating that "[t]his Agreement constitutes the entire understanding between the Parties" and that "[n]o other promises or agreements shall be binding or shall modify this Agreement unless in writing and signed by the Parties hereto," (Settlement Agreement ¶ 8), which courts have found to be "persuasive evidence that the parties did not intend to be bound prior to the execution of a written agreement," *Kaczmarcysk v. Dutton*, 414 F. App'x 354, 355 (2d Cir. 2011) (summary order); *see Williams v. Playscripts, Inc.*, No. 22-CV-6861, 2024 WL 3823198, at *5 (E.D.N.Y. Aug. 13, 2024) ("The presence of a merger clause – because it precludes consideration of prior oral agreements and understandings – is persuasive evidence that the parties did not intend to be bound prior to the execution of a written agreement."), *report and recommendation adopted*, 2024 WL 4043739 (E.D.N.Y. Sept. 4, 2024). On the other hand, the presence of a merger clause alone is not dispositive, *LiDestri Foods, Inc. v. 7-Eleven, Inc.*, No. 17-CV-6146, 2019 WL 6875236, at *7 (W.D.N.Y. Dec. 16, 2019); *see Lombardo*, 2025 WL 707500, at *7 (S.D.N.Y. Mar. 5, 2025) ("the presence of a merger clause in the draft settlement agreement d[id] not prove the parties' intent not to be bound" where there were no "provisions that specifically stated the settlements were not effective until signed by both parties"), and where the parties have communicated the oral settlement agreement to the court, the fact that "counsel added a boilerplate merger clause to an otherwise substantively identical version of the oral agreement does not undermine the evidence that the parties intended to be bound by the oral agreement," *McCray v. County of Orange*, No. 12-CV-3950, 2015 WL 13373605, at *5 n. 9

lacked authority." *Lombardo*, 2025 WL 707500, at *4. Defendant has not claimed, let alone provided affirmative evidence, that Ms. Cossu acted without authority in reaching the settlement.

(S.D.N.Y. Dec. 3, 2015), *aff'd in part, appeal dismissed in part*, 688 F. App'x 74 (2d Cir. 2017) (summary order). Similarly, while the agreement concludes with the statement that "IN WITNESS WHEREOF, the Parties have executed and intend to be bound by this Settlement Agreement," (Settlement Agreement), this provision does not suggest that the agreement was not effective until signed, *see Pers. Watercraft Prod. SARL v. Robinson*, No. 16-CV-9771, 2017 WL 4329790, at *6-7 (S.D.N.Y. Sep. 1, 2017) (rejecting argument premised on similar boilerplate language where parties' conduct suggested an intent to be bound prior to execution).

Moreover, at the March 2026 conference, Defendant made no suggestion that he had not intended the settlement agreement to be binding; he merely said that he had not followed through with the agreement because he "didn't have the funds." (*See* Minute Entry dated Mar. 5, 2026.) Accordingly, the first factor weighs in favor of enforcement.

**2. Partial Performance**

As to the second factor, "the Second Circuit has not specifically addressed whether the cessation of litigation and the memorializing of the settlement agreement constitute partial performance." *Santiago v. Agadjani*, No. 21-CV-7090, 2024 WL 4424240, at *10 (E.D.N.Y. Oct. 4, 2024); *see Acun v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 852 F. App'x 552, 555 (2d Cir. 2021) (summary order); *Patel v. Long Island Univ.*, No. 17-CV-2170, 2023 WL 6211769, at *10 (E.D.N.Y. Sept. 25, 2023), *aff'd*, No. 23-7381, 2024 WL 4763927 (2d Cir. Nov. 13, 2024) (summary order). Courts have found partial performance, however, where the cessation of litigation significantly impacted discovery, *see Williams*, 2024 WL 3823198, at *6 (second factor weighed slightly in favor of enforcement where parties "cease[d] discovery for several months in reliance on the settlement in principle"), or where the parties communicated the settlement to the court, *see Galanis v. Harmonie Club of City of N.Y.*, No. 13-CV-4344, 2014 WL 4928962, at *9 (S.D.N.Y. Oct. 2, 2014) (second factor weighed in favor of enforcement where parties filed a

joint letter informing court of the settlement and requesting dismissal) (collecting cases); *Jackson v. N.Y.C. Dep't of Educ.*, No. 10-CV-9193, 2012 WL 1986593, at *3 (S.D.N.Y. June 4, 2012) (parties partially performed settlement agreement "by preparing and exchanging draft settlement documents, and most significantly, communicat[ing] the settlement to the Court"); *Mason Tenders Dist. Council of Greater N.Y. v. Concore Equip., Inc.*, No. 03-CV-634, 2011 WL 5548912, at *11 (S.D.N.Y. Nov. 10, 2011) ("There has been partial performance in this matter in that Plaintiffs forwarded a proposed formal stipulation, and Plaintiffs' claims were dismissed by the Court under the belief that the parties had settled the . . . Litigation.").

Here, not only was the proposed settlement memorialized by Defendant's own counsel before being signed by Plaintiff, it was also communicated to the Court in a letter filed on behalf of both parties, (ECF No. 45), which resulted in the case being dismissed, (ECF No. 46 (discontinuing action with prejudice but permitting Plaintiff to apply to restore the action if settlement was not consummated within forty-five days)). Moreover, the letter was filed the day before fact discovery was scheduled to close and just over a week before pre-motion letters would have been due, (*see* ECF No. 44), at which point Defendant's deposition was still outstanding, (*see* P's Mot. at 2; *see also* ECF Nos. 39, 43). Under these circumstances, the Court finds that the second factor weighs in favor of enforcement.

**3. Material Terms**

As to the third factor, "[t]he most important term of a settlement agreement is the settlement amount. If the parties have agreed to the settlement amount, courts often find that this factor favors enforcement even when the parties are still negotiating additional terms." *Morales*, 2023 WL 8361295, at *3; *see Smith v. Home Depot U.S.A., Inc.*, No. 20-CV-04125, 2024 WL 1174288, at *10 (E.D.N.Y. Mar. 19, 2024) (third factor weighed in favor of enforcement where the parties "plainly agreed upon the single most important term of the agreement, the settlement

amount”), *appeal withdrawn sub nom.*, *Smith v. Home Depot*, No. 24-1049, 2025 WL 1178465 (2d Cir. Jan. 10, 2025).

Mr. Nath informed the Court prior to the March conference that the parties had agreed to settle the action for $10,000, (*see* ECF No. 50), and Ms. Cossu did not challenge this figure at the conference. The partially executed agreement confirms this amount. (*See* Settlement Agreement ¶ 2.) Moreover, while Defendant informed the Court that he had spoken with Plaintiff (not her counsel) about reducing the amount to $7,000 in light of his inability to procure sufficient funds, he did not dispute that the original amount on which the parties agreed was $10,000, nor did he contend that any additional terms were yet to be negotiated (let alone material terms).[7] The third factor thus favors enforcement.

**4. Type of Agreement Usually Reduced to Writing**

As to the fourth factor, “settlements of any claim are generally required to be in writing.” *Savor Health LLC*, 2025 WL 4375079, at *5; *see McInnis USA Inc.*, 2022 WL 17740165, at *4. But where, as here, the settlement agreement *was* committed to writing, and it simply was not formally executed, courts have found the fourth factor met. *See McInnis USA Inc.*, 2022 WL 17740165, at *4 (“[T]he Settlement Agreement in this case was committed to writing, and the fact that the agreement had not been formally executed by [the non-movant] does not counsel against enforcing it.”); *Gordon v. City of N.Y.*, No. 09-CV-4577, 2015 WL 1514359, at *7 (E.D.N.Y. Apr. 3, 2015) (“[E]ven if the agreement is not deemed to have been fully executed,

[7] Defendant’s subsequent attempt to reduce the settlement amount does not change the fact that he had already agreed on the settlement’s initial terms. *See McInnis USA Inc. v. All Am. Transit Mix Corp.*, No. 21-CV-221, 2022 WL 17740165, at *3 (E.D.N.Y. Dec. 16, 2022) (finding third factor met despite non-movant’s attempt to add terms to settlement after it had accepted initial terms and its counsel informed opposing party that it would sign agreement); *see also Murphy v. Inst. of Int’l Educ.*, 32 F.4th 146, 152-53 (2d Cir. 2022) (“[A] party cannot reopen a deal by proposing additional terms at a later date.”).

the fact that it was memorialized in a writing weighs in favor of enforcement."); *Winn*, 2002 WL 31133388, at *2 (fourth factor favored enforcement despite defendant's refusal to execute agreement where settlement was "memorialized in a detailed contract drafted by the Defendant's own counsel").

Accordingly, all four factors weigh in favor of enforcement, and Plaintiff's motion is granted.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's motion to reopen the case and enforce the terms of the parties' settlement in a Court order is GRANTED. The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 55), and reopen the case. The Court will then so-order the settlement agreement and close the case.

**SO ORDERED.**

Dated: August 17, 2026
White Plains, New York

Cathy Seibel

CATHY SEIBEL, U.S.D.J.